**AFFIRMED and Opinion Filed  March 9, 2020**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01311-CR

**JOSEPH DAVID SCARBOROUGH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-80169-2018**

## MEMORANDUM OPINION
Before Justices Myers, Whitehill, and Pedersen, III
Opinion by Justice Whitehill

Appellant was convicted of continuous sexual abuse of a child and sentenced to forty-seven years in prison.  In two issues, he argues that his trial counsel rendered ineffective assistance and the trial court abused its discretion by allowing more than one outcry witness.

We conclude the record does not demonstrate that counsel's performance fell below an objective standard of reasonableness.  We further conclude that the court did not abuse its discretion by allowing two outcry witnesses to testify about different acts of abuse, and even if the evidence was erroneously admitted, it was harmless.  We thus affirm the trial court's judgment.

## I. Background

Appellant told his cousin, Amye Cox, that he molested his stepson, JG, when JG was nine years old and that it continued for a year.

Cox later asked JG if appellant had molested him when he was a child. Specifically, Cox asked JG if appellant (i) made JG touch him; (ii) made JG give him oral sex; and if (iii) appellant's penis "ever went inside" JG. JG responded "yes" to all three questions and said that it happened every couple of weeks for a year.

When confronted by Cox and other family members, appellant admitted he abused JG for four to five months. Cox's sister contacted the authorities.

McKenzie McIntosh forensically interviewed JG at the Collin County Children's Advocacy Center and testified generally that JG reported appellant's abuse and that he provided details. When the State asked McIntosh whether JG told her that appellant's hand touched JG's genitals and that appellant's genitals touched JG's buttocks, McIntosh replied, "Yes."

Corporal Danny Stasik with the Collin County Sheriff's Office testified that he interviewed appellant and appellant admitted that he sexually abused JG "multiple times," including: (i) contacting JG's anus and mouth with his male sexual organ, (ii) contacting JG's genitals with his hand, (iii) contacting JG's buttocks with his genitals, and (iv) contacting JG's hand with his genitals. Appellant admitted that each of these offenses happened over several months when JG was under fourteen.

JG was eighteen at the time of trial and said that he was eight or nine years old the first time something sexual happened with his stepfather. JG testified in detail about the abuse.

Appellant was found guilty of continuous sexual abuse of a child and was sentenced to forty-seven years in prison.

## II. ISSUES

**A. First Issue: Does the record demonstrate ineffective assistance of counsel?**

No, because there was no record evidence regarding trial counsel's strategy.

Appellant's first issue argues that trial counsel rendered ineffective assistance. Specifically, he contends that his trial lawyer erred by failing to object when the State asked appellant's aunt if she "believed appellant would sexually assault another child."[1]

To prevail on an ineffective assistance of counsel claim, an appellant must show two elements: deficient performance and prejudice. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Strickland v. Washington*, 466 U.S. 668 (1984). The claim must be firmly founded in the record. *Goodspeed*, 187

---

[1] The challenged testimony requires some context. Aunt Nelda testified that she asked appellant if he was afraid that he was going to molest his own son, and appellant said "maybe." Then, the following testimony about which appellant complains:

> Q. . . . [W]hat's going through your mind when the defendant told you maybe, maybe he might [do] the same thing to [his son]?
> A. I honestly thought he probably would have. That was why he was asking, he had told Amye that particular time, I honestly thought that.

S.W.3d at 392. As a result, direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Id.* This is particularly true with respect to the deficient performance element because (i) we review counsel's conduct with great deference, without hindsight's distorting effects, and (ii) counsel's reasons for failing to do something often do not appear in the record. *See id.*

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Id.* Absent such an opportunity, an appellate court should not find deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Id.* "An appellant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Because the reasonableness of counsel's choices often involves facts that do not appear in the appellate record, an application for writ of habeas corpus is generally the more appropriate vehicle to raise ineffective assistance of counsel. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Here, there was no factual development of appellant's ineffective assistance of counsel claim in the trial court. Although appellant filed a new trial motion, that motion did not raise ineffective assistance as a ground, and it was overruled by operation of law.

Assuming for the sake of argument that the challenged testimony was inadmissible, the record is silent as to why counsel did not object. We assume counsel had a strategy if any reasonable strategic motivation can be imagined. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Deciding not to object to inadmissible evidence can be a plausible trial strategy. *See McKinny v. State*, 76 S.W.3d 463, 473-74 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Reviewing the totality of the representation and the circumstances of the case, we can imagine some strategic motivation for not objecting to the testimony. Thus, appellant fails to demonstrate that counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392–93.

Accordingly, we resolve appellant's first issue against him.

## B. Second Issue: Did the trial court abuse its discretion by allowing two outcry witnesses?

No, because the witnesses testified about separate events. And any error was harmless because JG gave substantively similar testimony.

The trial court held an outcry hearing and ruled that McIntosh, the forensic interviewer, could testify regarding two issues: (i) appellant touching JG's buttocks, and (ii) appellant touching JG's genitals. McIntosh testified to those two acts.

Appellant's second issue argues that the trial court abused its discretion in allowing the State to present two outcry witnesses. According to appellant, Cox was

the first person JG told about the abuse, so McIntosh (the forensic examiner) should not also have been allowed to testify.[2]

The "outcry" statute excludes from hearsay a child's statements describing the alleged sexual offense that the child made to the first adult other than the defendant. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2; *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). There can be only one outcry witness per event of sexual abuse. *See Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011).

The trial court has broad discretion to determine which of several witnesses is an outcry witness to a particular event, and unless it clearly abuses its discretion, we will not disturb its decision. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). A trial court does not abuse its discretion unless its decision falls outside the zone of reasonable disagreement. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Appellant's argument rests on the premise that McIntosh's testimony concerned the same incidents that Cox had already testified about (appellant touching JG's buttocks and genitals). We disagree.

The indictment alleged that appellant committed two or more acts of sexual abuse during a period of thirty or more days in duration, including two instances of

---

[2] Appellant now argues that Cox covered the same outcry as McIntosh when she defined "molested" for JG and JG agreed that he had been molested. But this complaint was not raised in the court below. See *Armijo v. State*, No. 05-18-00489-CR, 2019 WL 6888518, at *5 (Tex. App.—Dallas Dec.18, 2019, no pet.) (error not preserved when arguments on appeal do not comport with trial objections). Instead, appellant argued that the Cox outcry concerning anal penetration necessarily included touching the buttocks.

aggravated sexual assault (appellant's penis contacted JG's anus and appellant's penis contacted JG's mouth) and three instances of indecency with a child by sexual contact (appellant's hand touching JG's penis, appellant causing JG's hand to touch appellant's penis, and appellant causing JG's buttocks to touch appellant's penis). Thus, there were five separate instances of alleged abuse.

Cox testified that when she asked JG about the abuse, he did not know what the word "molest" meant. Cox defined the word as "where an adult man or an adult woman touches you in your private area where they're not supposed to." Then, Cox asked JG whether appellant had done that to him, and JG responded, "Yes, ma'am." JG then responded "yes" to three more questions: whether appellant made him touch appellant's private part, whether appellant made JG give him a "blow job," and whether appellant ever put his private part into JG. When defense counsel asked Cox if she asked JG whether appellant had ever touched his genitals, Cox said, "No."

McIntosh testified as follows:

Q: [During the interview, did [JG] outcry to the defendant's hand touching [JG's] - - his genitals?

A: Yes

Q: And did he outcry to the defendant's genitals touching [JG's] buttocks?

A: Yes

Q: And he– those weren't the only two things he outcried to; is that right?

A: There was more.

–7–

McIntosh did not describe the additional outcries.

McIntosh's testimony was limited to two types of abuse that were not covered by Cox's testimony. Accordingly, the trial court did not abuse its discretion by allowing McIntosh to testify about the outcry concerning those incidents.

Moreover, even if the testimony was erroneously admitted, JG provided substantially similar testimony concerning the same incidents McIntosh described, but in greater detail. Therefore, we conclude that there is a fair assurance that McIntosh's testimony did not influence the jury or had but a slight effect. *See Bourque v. State*, 156 S.W.3d 675, 677 (Tex. App.—Dallas 2005, pet. ref'd) (substantially similar inadmissible hearsay harmless where victim provided explicit and detailed testimony).

Thus, we resolve appellant's second issue against him.

### III. CONCLUSION

Having resolved appellant's issues against him, we affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
1801311F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

JOSEPH DAVID SCARBOROUGH,
Appellant

No. 05-18-01311-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas Trial Court Cause No. 219-80169-2018.
Opinion delivered by Justice Whitehill. Justices Myers and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 9, 2020