**AFFIRMED and Opinion Filed December 17, 2020**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00886-CR**

**LATAURUS KENSHEY MURPHY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F19-00400-X**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Browning
Opinion by Justice Carlyle

Lataurus Kenshey Murphy appeals his conviction for recklessly causing serious bodily injury to an elderly person. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

BACKGROUND

Amber Gray approached sixty-nine-year-old Richard Delle while panhandling in a Home Depot parking lot. She asked for money, he refused and, according to Ms. Gray, made an offensive comment that prompted her to spit on him. He spat on her in return and shoved her away with one hand. She approached again and began

waiving her finger in his face, after which he backed up and warned her to stay away. She said he appeared to adopt a "fighting stance," with one foot in front of the other, and told her he had a black belt in karate. She admitted, however, she was in the same stance and did not feel physically threatened by him. Surveillance video showed that, after their exchange, Mr. Delle turned away from Ms. Gray and reached down to grab something off of the ground.

Mr. Murphy was Ms. Gray's boyfriend at the time. When Ms. Gray and Mr. Delle began their confrontation, Mr. Murphy started running towards them from across the parking lot. As Mr. Delle turned away from Ms. Gray, Mr. Murphy approached from behind and hit him.

Ms. Gray described the blow as a forearm "clothesline" to Mr. Delle's neck, but other witnesses described it differently. One witness said he saw Mr. Murphy hit Mr. Delle "harder than [he'd] ever seen anybody get hit in [his] life." He said Mr. Murphy "jumped when he was getting ready to hit [Mr. Delle] and he came down with his entire body weight and fist onto the left side of his face." Mr. Delle "never saw it coming," and "it was just, it was shocking."

The blow caused Mr. Delle to fall face-first into the concrete. As a pool of blood formed around his head, witnesses saw Mr. Murphy lean down, check Mr. Delle's pulse, and take what appeared to be items from Mr. Delle's wallet that had scattered on the ground. He and Ms. Gray fled the scene, but police soon apprehended them at a nearby apartment complex.

Mr. Delle suffered a skull fracture, bleeding in his brain, and a complex facial laceration. He eventually died from his injuries.

The grand jury indicted Mr. Murphy on a charge of intentionally and knowingly causing serious bodily injury to an elderly person. *See* TEX. PENAL CODE § 22.04(e). At trial, Mr. Murphy argued both that he did not knowingly or intentionally cause Mr. Delle's injuries and that his actions were legally justified because he was defending Ms. Gray. The jury convicted him of the lesser-included offense of recklessly causing serious bodily injury to an elderly person, found that he used either his hand or the ground as a deadly weapon, and assessed punishment—enhanced by a prior felony conviction—at 30 years' imprisonment.

## LEGALLY SUFFICIENT EVIDENCE SUPPORTS THE JURY'S RECKLESS-CONDUCT FINDING.

We review evidentiary sufficiency under the familiar *Jackson v. Virginia*[1] standard. *Brooks v. State*, 323 S.W.3d 893, 894, 901–02 (Tex. Crim. App. 2010). We review all the evidence and reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

"A person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and

---

[1] 443 U.S. 307 (1979).

unjustifiable risk that . . the result will occur." TEX. PENAL CODE § 6.03. "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

Mr. Murphy argues the evidence cannot support a finding that he acted recklessly, because he struck Mr. Delle only once, and "[t]here is no evidence that he actually foresaw the risk of death involved and consciously decided to ignore it." We disagree. As an initial matter, it is not necessary that Mr. Murphy foresaw the risk of Mr. Delle's death; he needed only be aware there was a substantial and unjustifiable risk of causing serious bodily injury, which is not limited to death. *See id.* § 1.07(46) (defining "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ").

The State presented evidence that Mr. Murphy hit an unsuspecting Mr. Delle from behind. One witness, whom the jury was free to credit, described the blow as "shocking" and added that he had never seen anyone get hit that hard. The witness noted that Mr. Murphy jumped before striking Mr. Delle and channeled the whole force of his body weight into his fist as it struck Mr. Delle's head. An ordinary person would know that hitting someone in the head with that amount of force—particularly a victim who cannot see the blow coming—carries a substantial risk of causing

serious bodily injury. From this evidence, a rational jury could conclude beyond a reasonable doubt that Mr. Murphy acted recklessly.

MR. MURPHY USED DEADLY FORCE AND WAS NOT ENTITLED TO AN<br>INSTRUCTION ON DEFENSE OF A THIRD PERSON.

Mr. Murphy next contends the trial court erred by instructing the jury on the use of deadly force as part of its instruction on defense of a third person, arguing he used only non-deadly force against Mr. Delle. Because Mr. Murphy did not object to the instruction, we will reverse only if the instruction was both erroneous and egregiously harmful. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020).

Deadly force includes force that, in the manner of its use, "is capable of causing . . . death or serious bodily injury." TEX. PENAL CODE § 9.01(3). It is undisputed that Mr. Murphy used force that caused Mr. Delle's injuries and death; thus, by definition, Mr. Murphy used deadly force. *See Alonzo v. State*, 353 S.W.3d 778, 783 n.22 (Tex. Crim. App. 2011) ("[F]orce that results in serious bodily injury or death is, by definition, deadly force." (citing *Ferrel v. State*, 55 S.W.3d 586, 592 (Tex. Crim. App. 2001))). The trial court did not err to the extent it declined to instruct the jury on the use of non-deadly force in defense of a third person. *See* TEX. PENAL CODE §§ 9.31(d), 9.33.

Though Mr. Murphy does not raise the issue on appeal, the trial court nevertheless erred by instructing the jury on the use of deadly force in defense of a third person. A defendant is entitled to an instruction on any defensive issue raised

by the evidence, regardless of the strength or credibility of that evidence. *Jordan*, 593 S.W.3d at 343. But an instruction should not be given if the evidence, viewed in the light most favorable to the defendant, cannot support a rational jury finding as to each element of the defense. *Id.*

A person is justified in using deadly force to protect a third person only if "under the circumstances as the actor reasonably believes them to be," deadly force would be justified under section 9.32 of the penal code to protect the actor from the "unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect," and the actor "reasonably believes that his intervention is immediately necessary to protect the third person." TEX. PENAL CODE § 9.33. Thus, to warrant an instruction on the use of deadly force in defense of Ms. Gray, the evidence would have to support a finding that Mr. Murphy reasonably believed his intervention was immediately necessary to protect Ms. Gray from the "use or attempted use of unlawful deadly force" or the "imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery." *Id.* § 9.32(a).

Viewed in the light most favorable to Mr. Murphy, the evidence at most showed that Mr. Delle spat on Ms. Gray, shoved her away with one hand, adopted a "fighting stance" in response to her charging at him, and warned her that he had a black belt in karate. Mr. Murphy concedes in his brief there is no evidence suggesting Mr. Delle used or attempted to use deadly force. Nor is there any evidence suggesting

Mr. Delle threatened to kidnap, murder, sexually assault, or rob Ms. Gray. Moreover, there is no evidence suggesting Mr. Murphy feared any of those scenarios. Thus, there is no evidence from which a rational jury could find that Mr. Murphy's deadly force was legally justified, and the trial court erred by providing an instruction on defense of a third person.

But, as noted, Mr. Murphy does not assert this error on appeal; he complains only that the trial court should have framed its instruction in terms of non-deadly force.[2] Even if we assume a broader challenge to the instruction is "fairly included" within this point of error,[3] the erroneous instruction does not warrant reversal, because Mr. Murphy did not suffer egregious harm. *See Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) ("[e]gregious harm is a 'high and difficult standard' to meet").

The trial court gave the instruction for Mr. Murphy's benefit, allowing him to argue that his actions were legally justified. *See Castro v. State*, No. 13-17-00266-CR, 2019 WL 3484426, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 1, 2019, no pet.) (mem. op., not designated for publication) (erroneous instruction harmless where it benefitted defendant). Nothing in the record suggests the instruction confused the jury or adversely affected Mr. Murphy's defense.

---

[2] It is unclear from the record whether Mr. Murphy requested an instruction on defense of a third person. If he did make such a request, he could not complain on appeal that the trial court erred by granting it. *See Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011).

[3] *See* TEX. R. APP. P. 38.1(f); *Harrell v. State*, No. 05-19-00760-CR, 2020 WL 6018711, at *5–6 (Tex. App.—Dallas Oct. 12, 2020, no pet.).

MR. MURPHY DID NOT PRESERVE HIS JURISDICTIONAL CHALLENGE,
WHICH FAILS IN ANY EVENT.

In his final issue, Mr. Murphy contends the trial court, Criminal District Court Number Six, lacked jurisdiction because the 363rd District Court, which empaneled the grand jury that returned his indictment, did not enter an order transferring the case. Mr. Murphy appropriately acknowledges both that he did not object on this basis in the trial court and that he therefore waived the issue under our precedent. *See Mills v. State*, 742 S.W.2d 832, 835 (Tex. App.—Dallas 1987, no pet.).

Mr. Murphy's argument also fails because the record does not show a transfer order was necessary. The court impaneling a grand jury is not necessarily assigned all cases returned by the grand jury, *Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd), and in large counties like Dallas, could not efficiently handle all cases returned by a grand jury. Where two or more courts have concurrent jurisdiction over a criminal offense, the court where the indictment is first filed retains jurisdiction. TEX. CODE CRIM. PROC. art. 4.16; *Mills*, 742 S.W.2d at 834–35.

The record shows the indictment in this case was filed in Criminal District Court Number Six. Nothing in the record suggests it was first filed in the 363rd District Court. Thus, the record does not support Mr. Murphy's assertion that a transfer order was required. *See Bourque*, 156 S.W.3d at 678.

\* \* \*

We affirm the judgment of the trial court.

/Cory L. Carlyle/

CORY L. CARLYLE
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
190886F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LATAURUS KENSHEY MURPHY,
Appellant

No. 05-19-00886-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. F19-00400-X.
Opinion delivered by Justice Carlyle.
Justices Molberg and Browning
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 17th day of December, 2020.